## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| CITY OF WAUSAU, WISCONSIN | ) C.A. No. _____ |
| | ) |
| *Plaintiff,* | ) |
| | ) |
| *v.* | ) **Jury Trial Demanded** |
| | ) |
| GEORGIA-PACIFIC LLC;  GRAPHIC PACKAGING | ) |
| INTERNATIONAL, LLC;  MARATHON ELECTRIC | ) **CERCLA COMPLAINT** |
| LLC;  REGAL REXNORD CORPORATION; | ) **42 U.S.C. §§ 9607(a) and** |
| NELSON NAME PLATE COMPANY;  TRIMAS | ) **9613(f)(1)** |
| CORPORATION;  WAUSAU PAPER CORP.; | ) |
| STARBOARD VALUE LP;  ESSITY OPERATIONS | ) |
| WAUSAU LLC;  ESSITY PROFESSIONAL | ) |
| HYGIENE NORTH AMERICA LLC;  NIAGARA | ) |
| WORLDWIDE LLC;  NIAGARA DEVELOPMENT | ) |
| LLC;  TERX SHREDDING & RECYCLING | ) |
| COMPANY, LLC;  AHLSTROM NA SPECIALTY | ) |
| SOLUTIONS LLC;  *and*  WAUSAU CHEMICAL | ) |
| CORPORATION, | ) |
| | ) |
| *Defendants.* | |

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, CITY OF WAUSAU, WISCONSIN (hereinafter "Plaintiff") hereby files this

complaint against Defendants GEORGIA-PACIFIC LLC; GRAPHIC PACKAGING

INTERNATIONAL, LLC; MARATHON ELECTRIC LLC; REGAL REXNORD

CORPORATION; NELSON NAME PLATE COMPANY; TRIMAS CORPORATION;

WAUSAU PAPER CORP.; STARBOARD VALUE LP; ESSITY OPERATIONS WAUSAU

LLC; ESSITY PROFESSIONAL HYGIENE NORTH AMERICA LLC; NIAGARA

WORLDWIDE LLC; NIAGARA DEVELOPMENT LLC; TERX SHREDDING & RECYCLING

COMPANY, LLC; AHLSTROM NA SPECIALTY SOLUTIONS LLC; *and* WAUSAU

CHEMICAL CORPORATION, (collectively, "Defendants") to recover past, present, and future damages and remediation costs caused by ongoing contamination of Plaintiffs' public drinking water supply with per- and polyfluoroalkyl- based substances ("PFAS"), and punitive damages, and alleges, upon information and belief, as follows:

**THE PARTIES**

**Plaintiffs**

1.      **Plaintiff, City of Wausau** ("Wausau") is a municipal corporation duly organized and existing by virtue of the laws of the State of Wisconsin, with its principal place of business located at 407 Grant Street, Wausau, Wisconsin.

2.      Plaintiff has the responsibility of delivering safe, clean, and high-quality water that meets state and federal standards to close to 16,000 residential homes.

3.      Plaintiff's source of drinking water comes from six (6) municipal wells, all of which are located near the Wisconsin River. The wells range in depth from 95 feet to 160 feet and pump between 900 to 3000 gallons per minute.

**Defendants**

4.      **Defendant Georgia-Pacific LLC** ("Georgia-Pacific") is a Delaware Limited Liability Company organized and existing under the laws of the State of Delaware, having a principal place of business located at 133 Peachtree Street NE, Atlanta GA 30303. It is subject to service of process via its registered agent, United Agent Group Inc., 1521 Concord Pike, Suite 201, Wilmington DE 19803-3645.

5.      On information and belief, the James River Corporation, formed in 1969, owned paper mills and related facilities at 200 Central Bridge Street, Wausau, Wisconsin and 700 West Bridge Street, Wausau, Wisconsin ("James River Paper Mill").

6.      On information and belief, the James River Corporation merged with Fort Howard Corporation in 1997 to form Fort James Corporation.

7.      On information and belief, Georgia-Pacific acquired the Fort James Corporation in 2000, and Georgia-Pacific is a successor corporation to both James River Corporation and Fort Howard Corporation.

8.      On information and belief, papers mills are a significant source of PFAS in the environment, paper mills use PFAS in paper and cardboard manufacturing, and paper mills wastewater discharge contains high levels of PFAS.

9.      On information and belief, the James River Paper Mill was located adjacent to the Wisconsin River and within the floodplain of the Wisconsin River, near Plaintiff's groundwater wells, and discharged to the Wisconsin River.

10.      **Defendant Graphic Packaging International, LLC** ("Graphic Packaging") is a Delaware Limited Liability Company organized and existing under the laws of the State of Delaware, having a principal place of business located at 1500 Riveredge Parkway, Suite 100, Atlanta GA 30328.  It is subject to service of process via its registered agent, Corporation Service Company, 251 Little Falls Drive, Wilmington DE 19808-1674.

11.      On information and belief, Graphic Packaging produces a wide variety of paperboard products for the foodservice, food, personal care, healthcare, and beauty industries, among others.

12.      On information and belief, Graphic Packaging owns their facility at 200 Central Bridge Street, Wausau, WI ("Graphic Packaging Facility") and produces coated recycled paperboard, among other products, at this facility.

13.    On information and belief, PFAS have historically been used at the Graphic Packaging Facility.

14.    On information and belief, the Graphic Packaging Facility is adjacent to the Wisconsin River and within the floodplain of the Wisconsin River, near Plaintiff's groundwater wells, and discharges to the Wisconsin River.

15.    **Defendant Marathon Electric, LLC** ("Marathon Electric") is a Wisconsin Limited Liability Company organized and existing under the laws of the State of Wisconsin, having a principal place of business located at 100 East Randolph Street, Wausau WI 54401 ("Marathon Electric Facility").  It is subject to service of process via its registered agent, Registered Agent Solutions, Inc., 100 Wilburn Road, Suite 100, Sun Prairie WI 53590-1478.

16.    On information and belief Marathon Electric has been manufacturing industrial electric motors, power generators, and other products for industrial and commercial application at the Marathon Electric Facility since 1913.

17.    On information and belief, PFAS have been used historically in industrial applications like those at the Marathon Electric Facility for their resistance to heat, oil, grease, water, and for other uses.

18.    On information and belief, the Marathon Electric Facility is adjacent to the Wisconsin River and within the floodplain of the Wisconsin River, near Plaintiff's groundwater wells.

19.    **Defendant Regal Rexnord Corporation** ("Regal Rexnord") is a Wisconsin Corporation organized and existing under the laws of the State of Wisconsin, having a principal place of business located at 111 West Michigan Street, Milwaukee WI 53203.  It is subject to

service of process via its registered agent, Corporation Service Company, 33 East Main Street, Suite 610, Madison WI 53703-4655.

20.     On information and belief, Regal Rexnord acquired Marathon Electric in 1997.

21.     **Defendant Nelson Name Plate Company** ("Nelson Name Plate") is a California Corporation organized and existing under the laws of the State of California, having a principal place of business located at 708 Nogales Street, City of Industry CA 91748.  It is subject to service of process via its registered agent, C T Corporation System, 301 South Bedford Street, Suite 1, Madison WI 53703-3691.

22.     On information and belief Nelson Name Plate owns and operates a facility at 311 Winton Street, Wausau, WI ("Nelson Facility").

23.     On information and belief, the Wilson Hurd Company began operating at what is now the Nelson Facility in or around 1904, and in or around 2017 Nelson Name Plate acquired the Wilson Hurd Company and is now a successor of the Wilson Hurd Company.

24.     On information and belief, the Wilson Hurd Company manufactured, and Nelson Name Plate manufactures, custom name plates, graphic membrane switches, silicone keypads, circuit board assemblies, and similar products.

25.     On information and belief, PFAS, because of their durable properties, have been used historically as coatings and laminates in industrial applications requiring durable coatings, such as graphic overlays and nameplates.  In addition, PFAS have been used as adhesives and sealants in membrane switches and similar components.

26.     On information and belief, the Nelson Facility is adjacent to the Wisconsin River and within the floodplain of the Wisconsin River, near Plaintiff's groundwater wells.

27.     **Defendant TriMas Corporation** ("TriMas") is a Delaware Corporation organized and existing under the laws of the State of Delaware, having a principal place of business located at 38505 Woodward Avenue, Suite 200, Bloomfield Hills MI 48304.  It is subject to service of process via its registered agent, Corporation Service Company, 251 Little Falls Drive, Wilmington DE 19808-1674.

28.     On information and belief TriMas owns and operates a facility at 1000 North 1st Street, Wausau, WI ("TriMas Facility").

29.     On information and belief, the HammerBlow Corporation began operating at what is now the TriMas Facility in or around 1919, and in or around 2003 TriMas acquired the HammerBlow Corporation and is now a successor to it.

30.     On information and belief, HammerBlow Corporation manufactured towing, trailer, and related metal accessories, and PFAS have been used in metal finishing operations like these to prevent metal corrosion.

31.     On information and belief, until recently TriMas used the TriMas Facility to package products, as part of TriMas' business specializing in manufacturing dispensers, closures, and other industrial packaging solutions.

32.     On information and belief, PFAS, because of their durable properties, have been used in the packaging industry as specialty coatings for industrial containers or packaging materials that require chemical and water resistance and durability.

33.     On information and belief, the TriMas Facility is adjacent to the Wisconsin River and within the floodplain of the Wisconsin River, near Plaintiff's groundwater wells.

34.     **Defendant Wausau Paper Corp.** ("Wausau Paper") is a Wisconsin Corporation organized and existing under the laws of the State of Wisconsin, having a principal place of

6

business located at 2929 Arch Street, Philadelphia PA 19104.  It is subject to service of process via its registered agent, Corporation Service Company, 33 East Main Street, Suite 610, Madison WI 53703-4655.

35.     On information and belief, Wausau Paper owned and operated a paper mill located at 107 Everest Avenue, Brokaw, Wisconsin ("Wausau Mill"), which opened in or around 1899 and closed in or around March 2012.

36.     On information and belief, paper mills are a significant source of PFAS in the environment, paper mills use PFAS in paper and cardboard manufacturing, and paper mills wastewater discharge contains high levels of PFAS.

37.     On information and belief, the Wausau Mill is adjacent to the Wisconsin River and upstream from Plaintiff's groundwater wells, and discharged water into the Wisconsin River.

38.     **Defendant Starboard Value LP** ("Starboard") is a Delaware Limited Partnership organized and existing under the laws of the State of Delaware, having a principal place of business located at 777 Third Avenue, New York NY 10017.  It is subject to service of process via its registered agent, Cogency Global Inc., 850 New Burton Road, Suite 201, Dover DE 19904-5786.

39.     On information and belief, Starboard was a part owner of the Wausau Mill, starting in 2011.

40.     **Defendant Essity Operations Wausau LLC** ("Essity Operations") is a Wisconsin Limited Liability Company organized and existing under the laws of the State of Wisconsin, having a principal place of business located at 2929 Arch Street, Philadelphia PA 19104.  It is subject to service of process via its registered agent, Corporation Service Company, 33 East Main Street, Suite 610, Madison WI 53703-4655.

41.     On information and belief, Essity Operations acquired Wausau Paper and is a successor company to it.

42.     **Defendant Essity Professional Hygiene North America LLC** ("Essity Hygiene") is a Delaware Limited Liability Company organized and existing under the laws of the State of Delaware, having a principal place of business located at 2929 Arch Street, Philadelphia PA 19104. It is subject to service of process via its registered agent, Corporation Service Company, 251 Little Falls Drive, Wilmington DE 19808-1674.

43.     On information and belief, Essity Hygiene acquired a portion of Wausau Paper and is a successor company to it.

44.     **Defendant Niagara Development LLC** ("Niagara Development") is a Delaware Limited Liability Company organized and existing under the laws of the State of Delaware, having a principal place of business located at 1101 Mill Street, Niagara WI 54151. It is subject to service of process via its registered agent, Corporation Service Company, 251 Little Falls Drive, Wilmington DE 19808-1674.

45.     On information and belief Niagara Development purchased the Wausau Mill in or around 2012.

46.     **Defendant Niagara Worldwide LLC** ("Niagara Worldwide") is a Delaware Limited Liability Company organized and existing under the laws of the State of Delaware, having a principal place of business located at 1101 Mill Street, Niagara WI 54151. It is subject to service of process via its registered agent, Corporation Service Company, 251 Little Falls Drive, Wilmington DE 19808-1674.

47.     On information and belief Niagara Development purchased the Wausau Mill in or around 2012.

48.     **Defendant TerX Shredding & Recycling Company, LLC** ("TerX") is a Wisconsin Limited Liability Company organized and existing under the laws of the State of Wisconsin, having a principal place of business located at 14520 Pioneer Road, Newton, WI 53063. It is subject to service of process via its registered agent, Robert T. Burrows Jr., 14520 Pioneer Road, Newton WI 53063-9729.

49.     On information and belief, TerX is the current owner and operator at the Wausau Mill.

50.     **Defendant Ahlstrom NA Specialty Solutions LLC** ("Ahlstrom") is a Delaware Limited Liability Company organized and existing under the laws of the State of Delaware, having a principal place of business located at 2 Elm Street, Windsor Locks CT 06096.  It is subject to service of process via its registered agent, Business Filings Incorporated, 108 West 13th Street, Wilmington DE 19801-1145.

51.     On information and belief, Ahlstrom is the owner and operator of cells 1, 2, 3, and 4a of a landfill located 4th Street and Everest St in the Village[1] of Maine, Wisconsin ("Ahlstrom Landfill").

52.     On information and belief, the Ahlstrom Landfill is adjacent to the Wausau Mill, and was used, in part, for waste from the Wausau Mill.

53.     On information and belief, landfills, and landfill leachate, are a significant source of PFAS, particularly those like the Ahlstrom Landfill that accepted waste from sources of PFAS like the Wausau Mill.

---

[1] On information and belief, on or around October 1, 2018 Brokaw, Wisconsin and parts of the Town of Texas, Wisconsin merged into the Village of Maine, Wisconsin.

54.    On information and belief, the Ahlstrom Landfill is adjacent to the Wisconsin River, upstream from Plaintiff's groundwater wells, and discharges leachate to the Wisconsin River.

55.    **Defendant Wausau Chemical Corporation** ("Wausau Chemical") is a Wisconsin Corporation organized and existing under the laws of the State of Wisconsin, having a principal place of business located at 9919 Innovation Way, Wausau WI 54401. It is subject to service of process via its registered agent, John Bocke, 145593 Bristers Hill Road, Wausau WI 54401-2466.

56.    On information and belief, Wausau Chemical owns, or used to own, and operates, or used to operate, a facility at 2001 North River Drive, Wausau, Wisconsin ("Wausau Chemical Facility").

57.    On information and belief, Wausau Chemical packages, produces, and distributes chemicals for a wide range of applications including metal finishing, printing, dry cleaning, and others.

58.    On information and belief, on August 6, 2024, the United States Environmental Protection Agency ("EPA") sent a request for information to Wausau Chemical.  In it, EPA noted sampling at the Wausau Chemical Facility identified PFAS at concentrations above EPA's maximum containment limits.  EPA's letter seeks detailed information regarding the use of PFAS at Wausau Chemical.

59.    On information and belief, the Wausau Chemical Facility is on the east bank of the Wisconsin River, and approximately 800 feet north of Plaintiff's groundwater well # 4.

## BACKGROUND FACTS

60.    The City of Wausau, with a population of 40,000, owns a municipal drinking water system.  Plaintiff's system draws the drinking water it provides to customers from 6 groundwater

wells, all of which are located near the Wisconsin River. Plaintiff maintains over 250 miles of water mains, over 16,000 service connections, more than 1,700 fire hydrants, 10 booster stations, and 7 water storage tanks totaling 5,750,000 gallons of water storage. The water treatment facility treats and distributes 1.5 billion gallons of water each year; about 4.2 million gallons per day.

61.    In June of 2019, Plaintiff discovered each of its groundwater supply wells were contaminated with PFAS. These results included PFOA and PFOS levels ranging from 18.0 parts per trillion ("ppt") to 27.5 ppt. As a result, Plaintiff had to implement PFAS removal and mitigation measures adding millions of dollars in expenses. Subsequently, Plaintiff was forced to raise water rates significantly to keep residents safe and meet proposed state and federal drinking water standards.

62.    In order to address this contamination, Plaintiff installed an anion exchange resin system to improve drinking water quality. This allowed for some reduction in PFAS levels and would allow future treatment to be added to remove contaminants more effectively and efficiently.

63.    In 2020, the new treatment facility began construction. In 2022 Plaintiff City of Wausau tested its groundwater supply wells again and tested its treated drinking water from the old treatment facility. This testing showed PFOA and PFOS levels between 23.8 ppt and 35.3 ppt, levels above Wisconsin state recommendations. This became a significant concern in the community and Plaintiff provided bottled water and made individual pitcher filters available to all residents to assist in alleviating the anxiety in the community and provide some method for residents to reduce PFAS levels in water they consume.

64.    It was not until December 2022 when the new treatment facility went online that Plaintiff was able to begin managing PFAS and reducing PFAS levels in water being distributed to the residents. Also in 2022, Plaintiff commenced the design of a long term PFAS removal

11

treatment system, known as Granular Activated Carbon ("GAC"). The GAC treatment system, initially projected to cost $17 million, began construction in August 2023 and this treatment system was substantially completed in November 2024.

65.     During this interim period, prior to the GAC treatment going online, Plaintiff has already had to replace the anion exchange resin system once in order to keep PFAS levels under Wisconsin state recommendations, and now federal law. The cost of this exchange was $1 million -- yet another expense not expected and related directly to PFAS contamination.

66.     On April 10, 2024, EPA announced enforceable levels for PFOA and PFOS in drinking water. EPA set maximum containment levels (MCLs) for PFOA and PFOS at 4.0 ppt (also expressed as ng/L) under the Safe Drinking Water Act, well below the levels in Wausau, Wisconsin.

67.     Plaintiff was in the middle of a $45 million water treatment facility design to try and plan for PFAS contamination, all while trying to navigate the ever-changing landscape of PFAS regulation and making sure the new treatment facility would be able to manage PFAS and keep drinking water safe.

68.     Plaintiff has been significantly affected by PFAS contamination in its drinking water. This contamination has resulted in millions of dollars of water treatment facilities that needed to be constructed to remove PFAS from drinking water to ensure residents are drinking safe water that meets Safe Drinking Water Standards. Not only have these expenses resulted in a 65% water rate increase to cover the capital costs for these required facilities, but rate adjustments were implemented to make sure the utility is able to cover the increased operation costs of these new types of treatment to remove PFAS.

69.     Plaintiff's damages, caused by PFAS contamination from the Defendants, include, but are not limited to, investigation costs, testing and monitoring costs, costs of planning, design and installation of water treatment systems, treatment, operating and maintenance costs, infrastructure modifications, engineering fees and other related costs, all to protect its citizens from the harms of PFAS.

70.     The city has undergone a vast assessment to remediate the PFAS contamination on its water sources.  To this day Plaintiff has spent approximately $63,596,957.04 in the PFAS remediation and assessment as described above.

71.     Each of the Defendants facilities are within hydrological feature used by the Plaintiff to obtain its drinking water.

72.     On information and belief, hazardous chemical contamination including PFAS, and associated with the facilities and business operations of Defendants, reached the hydrological feature used by Plaintiff.

73.     Defendants, as the responsible party, and not Plaintiff or its customers, should bear all past, present, and future costs of addressing the above contamination.

74.     Upon information and belief, the Defendants are responsible, negligently, intentionally and/or in some actionable manner, jointly and severally, for the events and happenings referred to herein, and caused and continue to cause injuries and damages legally thereby to Plaintiff, as alleged, either through Defendants' own conduct or through the conduct of their agents, servants or employees, or due to the ownership, maintenance or control of the instrumentality causing them injury, or in some other actionable manner.

**PFAS**

75.    PFAS are man-made manufactured chemical compounds containing fluorine and carbon.  These synthetic chemicals have been used for decades in a wide range of industrial, commercial, and consumer products such as electroplating, non-stick cookware, stain-resistant fabrics, cosmetics, and products that resist grease, water, and oil.

76.    PFAS are known as "forever chemicals" due to their long lifespan and resistance to degradation due to light, water, and biological processes.

77.    PFAS enter the environment from industrial and commercial facilities that make or use PFAS to make other products. They also enter the environment when released from PFAS-containing consumer products during their use and disposal.

78.    Due to their strong chemical bond, PFAS can remain in the environment, particularly in water, for many, many years and are therefore referred to colloquially as "forever chemicals."

79.    PFAS can move through soil and into groundwater.  PFOS dissolves easily in water, and thus is mobile and spreads easily in the environment.  PFOS also readily contaminates soils and leach from the soil into groundwater, where they can travel significant distances.

80.    PFAS also bioaccumulate, meaning that they tend to accumulate in organisms and up the food chain.  PFAS bioaccumulate in numerous ways.  They are relatively stable once ingested, so that they bioaccumulate in individual organisms for significant periods of time. Because of this stability, any newly ingested perflurooctanoic acid ("PFOA") and PFOS will be added to any PFOA and PFOS already present.  In humans, PFOA and PFOS remain in the body for years.

81.    Human studies show associations between PFOA and PFOS levels in blood and an increased risk of several health effects, including effects on the liver, the immune system, high

cholesterol levels, increased risk of high blood pressure, changes in thyroid hormone, ulcerative colitis (autoimmune disease), pre-eclampsia (a complication of pregnancy that includes high blood pressure), and kidney and testicular cancer.

82.     These injuries can arise months or years after exposure to PFAS.

83.     PFAS' extreme persistence in the environment and its toxicity, mobility, and bioaccumulation potential, pose potential adverse effects to human health and the environment.

84.     PFOS, PFBA, PFHxS, and PFBA are among the 29 contaminants now being monitored under the United States Environmental Protection Agency's ("EPA") Fifth Unregulated Contaminant Monitoring Rule ("UCMR 5"), a rule EPA promulgated under the Safe Drinking Water Act.

85.     EPA has concluded that PFOS and PFOA are likely to be carcinogenic to humans, and likely to cause hepatic, immunological, cardiovascular, and developmental effects in humans. EPA has concluded that PFBA can cause developmental, thyroid, and liver effects in humans.

86.     Effective July 9, 2024, the United States Environmental Protection Agency ("EPA") designated PFOS as a "hazardous substance" under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. §§ 9601 *et seq.,* because EPA determined that PFOS and PFOA "may present a substantial danger to the public health or welfare or the environment when released." Final Rule, Designation of Perfluorooctanic Acid (PFOA) and Perfluorooctanesulfonic Acid (PFOS) as CERCLA Hazardous Substances, 89 Fed Reg. 39124 (May 8, 2024).  Under CERCLA, the quantity or concentration of a hazardous substance is not a factor.

## JURISDICTION AND VENUE

87.     Plaintiff brings this civil suit, in part, pursuant to sections 42 U.S.C. §§ 9607(a), 9613(f)(1), and 9613(g) of the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA").

88.     Under 28 U.S.C. § 1331, 42 U.S.C. § 6972(a), and 42 U.S.C. § 9613(b) this Court has jurisdiction over Plaintiff's CERCLA claims.

89.     Under 28 U.S.C. § 1402(b), venue is proper in this Court because Plaintiff resides in this judicial district, and because the acts and omissions alleged herein occurred in this judicial district.

## FIRST CAUSE OF ACTION
### Continuing Public Nuisance

90.     Plaintiff reincorporates the preceding paragraphs above as though fully set forth herein.

91.     Plaintiff, its residents, and businesses have the common law right to clean, safe, potable source of water of their own choosing.

92.     Plaintiff supplied a clean, safe, portable source of water when it was discovered that PFAS contamination had migrated to Plaintiff's water supply.

93.     Defendants by their negligent, reckless, and willful acts have caused the release of PFAS from their facilities that, because their facilities are within the Plaintiff's delineated Wellhead Protection Area, have migrated into the aquifers from which Plaintiff draws drinking water.

94.     By their actions, Defendants have unreasonably interfered with and/or endangered the public right to pure drinking water as well as a clean and unpolluted natural environment, including reserves of unpolluted groundwater.

16

95.    Defendants' conduct has injured the property, health, safety and/or comfort of a considerable number of persons.

96.    The nuisance caused by the presence of PFAS in Plaintiff's drinking water supply, both existing concentrations and those still migrating to it, has affected the public at large and has had a significant impact.

97.    The acts and omissions of Defendants unreasonably and significantly interfered with, and continue today to unreasonably and significantly interfere with, the common rights of Plaintiff, its residents, and business, to a safe source of drinking water of their own choosing, and have caused and continue today to cause, detrimental effects on the public health, welfare, safety, comfort, and convenience of the residents and businesses, thus creating a public nuisance.

98.    Defendants knew or, in the exercise of reasonable care should have known, that the release of PFAS into the subsurface would and has unreasonably and seriously endangered, injured, and interfered with the ordinary comfort, use, and enjoyment of vital groundwater resources relied upon by Plaintiff and the public.

99.    As a direct and proximate result of Defendants' conduct, they have created an ongoing public nuisance, and Plaintiff has incurred substantial damages, and will incur additional damages to remove PFAS from the public water supply so Plaintiff can provide its residents and consumer with clean and healthy water.

100.    The interference with Plaintiff's ability to deliver uncontaminated drinking water far outweighs any social utility of Defendants' actions.

101.    As a direct result of the foregoing, Plaintiff seeks compensatory damages in a sum to be determined by a jury at the time of trial.

## SECOND CAUSE OF ACTION
### Continuing Trespass

102.    Plaintiff reincorporates the preceding paragraphs above as though fully set forth herein.

103.    Plaintiff is the owner, operator, and actual possessor of real property and improvements used for collecting drinking water.

104.    Upon information and belief, Defendants knew, or should have known, that PFAS contamination migrated through groundwater contaminating Plaintiff's real property used for collecting drinking water and the drinking water itself.

105.    The acts and omissions of Defendants caused the contamination to migrate, via surface soils and sediments, stormwater runoff, the ground, and groundwater, contaminating Plaintiff's real property used for collecting drinking water, interfering with its property rights, including Plaintiff's right to the full use and enjoyment of its water system for treatment and distribution to residents and businesses. These acts and omissions created a trespass on Plaintiff's property and unlawful interference with Plaintiff's property rights.

106.    As a direct and proximate result of Defendants' conduct in creating an ongoing trespass against Plaintiff's property, in the form of the ongoing PFAS contamination of Plaintiff's water system, Plaintiff has incurred substantial damages and will incur additional damages to remove PFAS from the public water supply in order to provide its residents and customers with clean and healthy water.

107.    As a direct result of the foregoing, Plaintiff seeks compensatory damages in a sum to be determined at the time of trial.

## THIRD CAUSE OF ACTION
### Cost Recovery Liability Pursuant to 42 U.S.C. § 9607 (CERCLA)

108. Plaintiff reincorporates the preceding paragraphs above as though fully set forth herein.

109. Each Defendant is a "person" within the meaning of Section 101(21) of CERCLA, 42 U.S.C. § 9601(21).

110. Each Defendant is or was an "owner" and/or "operator" within the meaning of Section 101(20) of CERCLA, 42 U.S.C. § 9601(20).

111. Each of Defendants' locations is a "facility" within the meaning of Section 101(9) of CERCLA, 42 U.S.C. § 9601(9).

112. PFOA and PFOS are each a "hazardous substance" within the meaning of Section 101(14) of CERCLA, 42 U.S.C. § 9601(14), by designation pursuant to section 102 of CERCLA, 42 U.S.C. § 9602.

113. There has been a release, and continue to be releases, and/or disposal of hazardous substances and other PFAS from the Defendants' facilities within the meaning of Section 101(22) of CERCLA, 42 U.S.C. § 9601(22).

114. The hazardous substances and PFAS released from Defendants' facilities were released within the Wellhead Protection Area for the City of Wausau and have and are migrating to Plaintiff's public drinking water supply.

115. Plaintiff has incurred and will continue to incur necessary response costs to address the release or threatened release of hazardous substances and PFAS from Defendants' facilities.

116. Each Defendant is therefore a responsible party pursuant to Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), and liable for necessary response costs as the owner or operator of a facility from which there was a release of hazardous substances and PFAS that have contaminated Plaintiff's public drinking water supply.

117. By reason of the foregoing, Defendants are liable for Plaintiff's necessary response costs, and damages, regarding PFAS contamination to Plaintiff's public water supply.

**FOURTH CAUSE OF ACTION**
**Declaratory Judgment Pursuant to 42 U.S.C. §§ 9607(a) and 9613(g)(2) (CERCLA)**

118. Plaintiff reincorporates the preceding paragraphs above as though fully set forth herein.

119. By reason of the foregoing and pursuant to Section 113(g)(2) of CERCLA 42 U.S.C. § 9613(g)(2), Plaintiff is entitled to a declaratory judgment on liability and damages under 42 U.S.C. § 9607(a) for costs to remove and/or remediate the hazardous substances and PFAS contamination in Plaintiff's public drinking water supply as referenced herein.

120. A declaratory judgment will prevent the need for multiple lawsuits as Plaintiff continues to incur costs for which Defendants are liable and will provide a resolution of the issue between the parties regarding further liability for future costs.

121. A declaratory judgment will establish Defendants' allocation of costs associated with addressing the contamination of the public water supply, insuring an equitable and efficient response to the problem.

122. Public interest will be served in that a declaratory judgment will ensure a prompt and environmentally proper response to the contamination of Plaintiff's public drinking water supply.

123. Plaintiff will continue to incur additional remedial and response costs, including but not limited to costs to investigate, test, monitor, design, install, operate and maintain treatment systems, and take other measures to address the contamination of its property and its drinking water supply with hazardous substances and PFAS.

124.     Plaintiff's past and future costs are and will be consistent with the National Contingency Plan, 40 C.F.R. Part 300.

125.     Plaintiff is thus entitled to a declaratory judgment regarding Defendants' liability for response costs and damages that will be binding on subsequent actions to recover further response costs or damages.

### FIFTH CAUSE OF ACTION
**Punitive Damages**

126.     Plaintiff realleges and reaffirms each and every allegation set forth in all preceding paragraphs as if fully stated herein.

127.     The conduct of the Defendants, including but not limited to:

    a.  issuing no warnings and failing to divulge material information concerning the toxic nature, disposal, discharge and release of hazardous substances, including but not limited to PFAS and/or PFAS containing products, and other toxic chemicals which had a latent danger of impacting the water sources supplying Plaintiff's drinking water; and

    b.  knowing of the certainty of long-lasting water contamination, including specifically high risks to aquifers, groundwater from hazardous substances, including but not limited to PFAS containing products and other toxic chemicals, but nevertheless discharging these and causing great harm to Plaintiff – demonstrates an outrageous conscious disregard of Plaintiff and its customers' safety with implied malice and oppression for which punitive and exemplary damages should be imposed.

## SIXTH CAUSE OF ACTION:
### Negligence

128.    Plaintiff realleges and reaffirms each and every allegation set forth in all preceding paragraphs as if fully restated herein.

129.    Defendants knew or should have known that PFAS and PFAS containing products, and other toxic chemicals, create a substantial risk of harm to groundwater and to members of the public who consume such groundwater.

130.    Defendants knew or should have known that the chemicals containing PFAS and other toxic substances which they were distributing, purchasing, transporting, using, processing, mixing, storing, handling and/or disposing create a substantial risk of harm contaminating the soil, groundwater, the aquifers and therefore, Plaintiff's water supply wells.

131.    Defendants negligently distributed, stored, transported, and/or disposed of, or willfully, wantonly, and intentionally spilled, disposed of, or otherwise permitted the release of PFAS at and from their facilities and/or properties as to cause severe contamination of soil, groundwater, and/or the aquifer, and/or said Defendants own or owned the properties upon which such actions and/or results occurred.

132.    Defendants owed Plaintiff a duty to act as reasonable operators and/or owners of property and to take all necessary precautions to prevent the release of PFAS and other toxic chemicals into the soil and groundwater at their properties.

133.    Defendants owed Plaintiff a cognizable duty to exercise reasonable care in the purchasing, transporting, using, processing, mixing, storing, handling and/or disposing of PFAS and/or in owning property upon which such actions and/or results occurred to take reasonable measures to prevent the release and spread of PFAS and other toxic chemicals into the hydrological features and into Plaintiff's water source.

22

134.     Defendants owe Plaintiff a duty to act as reasonable operators and/or owners of property and to take all necessary steps to prevent the continuing and future release of PFAS from their facilities and/or properties.

135.     Upon learning of a release of solvents and compounds, including but not limited to PFAS containing products and PFAS and other toxic chemicals, at their facilities and/or properties, Defendants owed Plaintiff a duty to act reasonably to remediate, contain, and eliminate the release before it contaminated the aquifer and reached Plaintiff's supply wells.

136.     Defendants breached the above duties and failed to prevent the releases of PFAS containing products at their properties.

137.     Defendants also failed to take reasonable, adequate and sufficient actions to eliminate, correct, or remedy the releases of PFAS and other toxic chemicals after they occurred.

138.     Defendants continue to breach their duties to remediate and prevent ongoing and future releases of PFAS and other toxic chemicals from their properties into the groundwater that flows towards and is continuing to impact Plaintiffs' water supply.

139.     As a result of Defendants' breaches of their duties, Plaintiff has expended and/or will be forced to expend significant resources to test, monitor, and remediate the effects of Defendants' contamination for many years into the future.

140.     Defendants' breach of their duties was the direct, sole and proximate cause of Plaintiff's damages.

141.     As a direct result of the foregoing, Plaintiff seeks compensatory damages in a sum to be determined by a jury at the time of trial.

## SEVENTH CAUSE OF ACTION:
### Failure To Warn

142.     Plaintiff realleges and reaffirms each and every allegation set forth in all preceding

paragraphs as if fully restated herein.

143.    Defendants breached their duty to warn Plaintiff of the likelihood of release of hazardous substances, including but not limited to PFAS and other toxic chemicals, at and in the vicinity of Defendants' facilities, and, consequently, in the capture zone of Plaintiff's water sources.

144.    Upon learning of the release of hazardous substances, including but not limited to PFAS and/or products containing PFAS, and other toxic chemicals at their facilities and/or properties, Defendants owed Plaintiff a duty to timely notify and warn Plaintiff of the releases.

145.    Defendants breached that duty by failing to timely notify and warn Plaintiff of the releases of hazardous substances, including but not limited to PFAS and other toxic chemicals, on and under their properties and, consequently, in the capture zone of Plaintiff's wells.

146.    As a result of Defendants' breaches of their duty to warn Plaintiff, Plaintiff was forestalled from undertaking effective and immediate remedial measures, and Plaintiff has expended and/or will be forced to expend significant resources to test, monitor, and remediate the effects of Defendants' negligence for many years into the future.

147.    As a direct and proximate result of Defendants' above-described failure to provide warnings, Plaintiff has incurred and will continue to incur the following damages:

    a.  Existing contamination of Plaintiff's water supply, which may have been prevented or mitigated if timely warnings were given;

    b.  Costs of additional testing and monitoring of the hydrological features and Plaintiff's production wells for hazardous substances, including but not limited to PFAS and other toxic chemicals' contamination.

    c.  Costs of investigations, risk assessment and planning mitigation measures to address the contamination by hazardous substances, including but not limited to PFAS and other toxic chemicals;

    d.  Costs of treatment for hazardous substances, including but not limited to PFAS and other toxic chemicals, including design, installation and operation of GAC systems

24

to remove PFAS to safe level of non-detect;

    e.   Loss of water production capacity,

    f.   Diminished consumer confidence in Plaintiff's water;

    g.   Potential cost to design and install replacement wells;

    h.   Attorney fees and costs, and

    i.   Other compensatory damages.

148.     As a direct result of the foregoing, Plaintiff seeks compensatory damages in a sum to be determined by a jury at the time of trial.

## **PRAYER FOR RELIEF**

WHEREFORE, based on the forgoing claims, Plaintiff, CITY OF WAUSAU requests that the Court grants the following relief:

1.    Award the City of Wausau monetary damages for the continuing trespass and continuing public nuisance caused by the PFAS contamination of the City's public water supply.

2.    Find the Defendants liable for necessary response costs as the owner or operator of a facility from which there has been and is a release of hazardous substances and PFAS that have contaminated Plaintiff's public drinking water supply, and order Defendants to reimburse the City of Wausau for its past, present, and future costs to investigate, monitor, and evaluate the PFAS that continues to migrate into the City of Wausau's public water supply, including the costs of employing outside consultants and testing labs for these tasks.

3.    Order Defendants to pay for or agree to reimburse the cost of a treatment system(s) to be installed by the City of Wausau to remove PFAS from the incoming, untreated water.

4.    Issue a declaratory judgment on liability and damages under 42 U.S.C. § 9607(a) for costs to remove and/or remediate the hazardous substances and PFAS contamination in the Wausau public drinking water supply.

5.    Award Plaintiff its reasonable attorney fees and legal expenses incurred in evaluating the PFAS contamination and prosecuting these claims.

6.    Award Plaintiff such other relief as the Court deems just and proper.

Dated:  January 3, 2025                    Respectfully submitted,

*/s/ Daniel W. Varline*
Daniel W. Varline, Esq.
**DAVCYK & VARLINE, LLC**
1400 Merrill Avenue
PO Box 1192
Wausau WI  54402-1192
Tel. (715) 675-7777
DVarline@dvlawoffice.com

James L. Simpson, Esq.
        *(Pro Hac Vice Forthcoming)*
**NAPOLI SHKOLNIK PLLC**
360 Lexington Avenue, Floor 11
New York NY  10017-6502
Tel. (212) 397-1000
JSimpson@napolilaw.com

Paul J. Napoli, Esq.
        *(Pro Hac Vice Forthcoming)*
**NS PR LAW SERVICES LLC**
1302 Avenida Ponce de León
San Juan PR  00907-3982
Tel. (833) 271-4502

PNapoli@nsprlaw.com

***Counsel for Plaintiffs***